IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| CASSANDRA M. SMITH, | ) | C/A 5:05-1911-RBH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| VOORHEES COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

This action has been filed by the Plaintiff asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; the Equal Pay Act (EPA), 29 U.S.C. 206(d), et. seq., and the common law of South Carolina. Plaintiff is a former employee of the Defendant Voorhees College.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 27, 2006. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on November 16, 2006, following which the Defendant filed a reply memorandum on December 8, 2006. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## **Background and Evidence**[2]

The Defendant is a private, four year liberal arts institution located in Denmark, South Carolina. Plaintiff was hired by the Defendant in the summer of 1998 to serve as an Associate Professor of Biology and also to Chair the Division of Natural Sciences, Mathematics and Computer Science. Plaintiff's Deposition, pp. 5, 25.  Plaintiff was later promoted to Professor and then to Distinguished Professor, the first faculty member to receive that distinction. Jackson Deposition, pp. 11-12, and Exhibit 1.

Plaintiff was initially paid a salary of $50,400.  Monroe Affidavit, ¶ 12.  Plaintiff received regular raises thereafter, and by June 2005 was receiving a salary of $70,000 per year. Id. Plaintiff received regular contracts from the Defendant during the period of her employment reflecting her salary changes. Defendant's Exhibit A, VOR Nos. 156, 719, 720, 721, 724, 725. These contracts noted that a portion of Plaintiff's salary was being paid from federal grants, and that in such cases continuation of the payment of the salary amount beyond the contract period was dependent on additional grant funds being allocated.  Further, these contracts were subject to the "100% Rule", which provided that no employee paid from grant money was allowed to exceed 100% combined time and effort between the various grants and other college responsibilities.  Monroe Affidavit, ¶ 15.  Under this formulation, when grants were submitted, there was a designation of the percentage of time and effort the employee would be allocating to that grant project. Jackson Deposition, p. 5. Lee Monroe, President of the College, attests that if an employee's salary was greater than the negotiated amount in the grant, the percentage of the employee's time purchased by the grant was

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



decreased and, consequently, the time and effort percentage attributable to the grant had to be adjusted to stay in compliance.  Monroe Affidavit, ¶ 17.

Plaintiff received a proposed contract in September 2004 for a salary of $70,000.00, allocated as follows: "A portion of your salary is being paid from restricted (MBRS/47% - $32,900.00; EARDA/20% - $14,000.00; SCAMP/4% - $2,800.00; KELLOG/17% - $11,900.00) funds. Payment of salary beyond this contract period is dependent upon (1) additional funds from grantor, and continuation of your service in this position.  Institutional/$8,400.00; Restricted $61,600.00."  Defendant's Exhibit A, VOR 725; see also Jackson Deposition, Exhibit 8.

Monroe attests that any faculty member whose salary is paid, in part, from federal grants must, according to federal requirements, have an executed employment contract. However, Plaintiff refused to sign this contract, arguing that the percentages attributed to various grant funds did not match the percentages approved/accepted in the grants. Jackson Deposition, Exhibit 12; VOR 783.  Plaintiff testified that she was informed that she could not sign any documents that reflected percentages that did not correspond to the grants at issue. Plaintiff's Deposition, pp. 34-35. Thereafter, by letter dated June  1, 2005, Plaintiff was terminated from her position "due to [Plaintiff's] refusal to comply both with College and federal regulations for each employee to have a signed contract...."  Defendant's, Exhibit D; see also Exhibit H.

After pursuing her administrative remedies with the South Carolina Human Affairs Commission (SCHAC) and receiving a right to sue letter, Plaintiff filed this lawsuit in United States District Court.  Plaintiff asserts in her Complaint that she was discriminated against in violation of Title VII (first cause of action); that she was discriminated against in violation of the Equal Pay Act (second cause of action); that she was unlawfully retaliated against for engaging in protected conduct

3



(third cause of action); that the Defendant is guilty of breach of contract (fourth cause of action); and that the Defendant committed a public policy tort (fifth cause of action).  The Defendant has moved for summary judgment on all claims.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."  Rule 56(e), Fed.R.Civ.P.

### Discussion

### I.

### (Title VII Pay Discrimination Claim)

Plaintiff alleges in her first cause of action that she was paid less than three male faculty members, Richid Bendidi, Adelle George, and Randy Justice, in violation of Title VII .  Further, Plaintiff notes that she is an African-American, and asserts that she also received lower compensation than these three male faculty members due to her race, alleging that Bendidi is a Moroccan, George is an Egyptian, and Justice is a Caucasian. <u>Plaintiff's Deposition</u>, p. 39.

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin, and requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>also</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Plaintiff does not



argue that she has any direct evidence of pay discrimination, but instead argues her claim under the McDonnell Douglas indirect evidence proof scheme.[3]

The United States Supreme Court articulated a three-part analysis for reviewing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's gender. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

      1) **Prima facie case.** In order to establish a prima facie case for sex discrimination

---

[3]Pursuant to recent court rulings, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, since Plaintiff is only pursuing her claim under the traditional McDonnell Douglas proof scheme, the undersigned has only evaluated Plaintiff's claim using a McDonnell Douglas analysis.



in compensation under Title VII, a Plaintiff must normally show that (1) she is a member of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d at 343; Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp.2d 637, 644 (D.Md. 2004); Gbenoba v. Montgomery County Dep't of Health & Human Servs., 209 F.Supp.2d 572, 579 (D.Md. 2002). It is undisputed that Plaintiff is a member of a protected class (female and African-American). With respect to the second prong of the prima facie case, however, Plaintiff is not alleging that she was paid less than male employees; rather, she alleges that her salary would have been higher but for her gender and/or race, and cites the salaries of three male employees of the College in support of this claim.

Defendant argues that in order to establish her prima facie case, Plaintiff is required to show that she was being paid less money than a similarly situated male and/or non-African-American employee. However, while this would normally be one of the prongs of a Title VII wage discrimination claim prima facie case, such a showing is not always required. Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) [the exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged]. Rather, "a Title VII plaintiff suing for wage discrimination...is not required, as part of her prima facie case, to point to a person of the opposite sex performing equal work for greater pay when there is other highly probative evidence that her salary would have been higher but for her sex." Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 163 (6th Cir. 2004); see County of Washington v. Gunther, 452 U.S. 161, 178-179 (1981); see also Diamond v. T. Rowe Price Associates, Inc., 852 F.Supp. 372, 390 (D.Md. 1994); Conti v. Universal Enter., Inc., 50 Fed.Appx.



690, 698 (6th Cir. 2002) ["[P]laintiff's failure to produce evidence to show that she was paid less than male employees who performed equal work does not preclude her from establishing her claim of gender-based wage discrimination under Title VII.  Plaintiff must, however, produce some other evidence which shows that [her employer] discriminated against her in terms of her salary because of her gender"].

To establish her claim that her salary would have been higher but for her sex and/or race, Plaintiff has presented evidence relating to male employees Bendidi, George, and Justice. The evidence submitted to the Court concerning the Defendant's pay scales, as well as the salaries paid to these individuals and to the Plaintiff, is as follows:

Salary range for nine month research faculty contracts 2003 - 2004 academic year[4]

Distinguished Professor - starting salary of $75,000.00, with a mid level of $80,000.00, and a maximum of $85,000.00.

Associate Professor - starting salary of $40,000.00, with a mid level of $45,000.00, and a maximum of $50,000.00.

Assistant Professor - starting salary of $35,000.00, with a mid level of $40,000.00, and a maximum of $45,000.00.

---

[4]With respect to her Title VII claim, any right of recovery under Title VII is limited to alleged discriminatory acts that occurred within three hundred (300) days of the filing of Plaintiff's administrative charge. See 42 U.S.C. § 2000e-5(e); White v. BFI Waste Services, LLC, 375 F.3d 288, 292 (4th Cir. 2004) [only acts of discrimination which occurred within three hundred day period immediately proceeding the filing of an administrative charge of discrimination may be considered]. A copy of Plaintiff's administrative charge has not been provided to the Court; therefore, the period of time for which Plaintiff might have a right of recovery under Title VII is unknown for purposes of consideration of Defendant's summary judgment motion.  Nevertheless, consideration of any *evidence* relating to a purported discriminatory pay scale is not limited to this 300 day period. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 346-347 (4th Cir. 1994) ["Statutes of limitations do not operate as an evidentiary bar controlling the evidence admissible at the trial of a timely-filed cause of action"]; *cf.* Forsyth v. Federation Employment and Guidance Serv., 409 F.3d 565, 573 (2d Cir. 2005).  Therefore, the undersigned has discussed all of the evidence presented by the parties in this case.



Salary range for nine month instructional faculty contracts

Distinguished Professor - starting salary of $60,000.00, with a mid level of $65,000.00, and a maximum of $70,000.00.

Associate Professor - starting salary of $30,000.00, with a mid level of $35,000.00, and a maximum of $40,000.00.

Assistant Professor - starting salary of $25,000.00, with a mid level of $30,000.00, and a maximum of $35,000.00.

There are also provisions for payment of an additional $5,500.00 to division chairs, and $2,500.00 to coordinators. See Jackson Deposition, Exhibit 1.

Plaintiff notes that she was paid $65,000.00 for the 2003 -2004 academic year for a ten (10) month contract. Defendant's Exhibit A, VOR 724. By comparison, Bendidi and George were both paid $55,000.00 on nine (9) month contracts. Monroe Affidavit, ¶ 6, and attached Exhibit A, VOR Nos. 1380, 1390. Justice was not hired until 2004.

For the year 2004 - 2005, Plaintiff received a ten (10) month contract paying her $70,000.00. Defendant's Exhibit A, VOR 725. For this same period of time, George again received a nine (9) month contract for $55,000.00, while Bendidi received a ten (10) month contract for $63,750.00. Defendant's Exhibit A, VOR Nos. 1379, 1389. Justice, who was hired in 2004, received a nine (9) month contract for $63,000.00. Id, VOR 1404.

Plaintiff argues that, in 2003 -2004 as a distinguished research professor, she was paid over $10,000.00 less than the *starting* salary provided in the Defendant's pay scale for the 2003 -2004 academic year, while Bendidi and George, both Associate Professors, received *more* than the maximum allowed for their positions. For 2004 -2005[5], both Bendidi and George continued to

---

[5]Plaintiff represents to the Court that there does not appear to be any published 2004 -2005
(continued...)

8



receive above the maximum salary for an associate professor in the research faculty. As for Justice, he was a new hire in the 2004 - 2005 academic year as an Assistant Research Professor, and was paid $63,000.00, even though the 2003 - 2004 pay scale range provided a $35,000.00 starting salary for such a position. By contrast, Plaintiff was paid $70,000.00 for the 2004 - 2005 academic year, still below the *starting* salary for a distinguished research professor.

Defendant argues that Plaintiff was not research faculty, but was instead instructional faculty, and that the evidence therefore shows that Plaintiff was paid the mid level range for her position in 2003 - 2004, and the maximum for that position for 2004 -2005 (assuming the pay scales had not changed). Defendant also argues that the three male faculty members identified by the Plaintiff were "special faculty members due to instructional needs for certain degree types required to maintain accreditation," and as such were each entitled to $15,000.00 above the normal pay scale. Monroe Affidavit, ¶ 10; see also Exhibit C. Even at these salary levels, however, it is readily apparent that these three professors were all being paid above the maximum level for their positions, while Plaintiff was receiving pay at the mid range level for her position in 2003 - 2004 and, at most, the maximum for 2004 - 2005, even if Plaintiff was an instructional faculty member (as Defendant claims).

Further, although Plaintiff and the three male professors held different level professorships, it does not appear to be disputed in the evidence that the same pay scales applied to all four professors, including the Plaintiff (in other words, there was not one pay scale for biology professors, another pay scale for mathematic professors, and so on), and all four were therefore

---

[5](...continued)
pay scale.



supposedly considered under the same standards with respect to pay.  Jackson Deposition, Exhibit 1; see also Defendant's Exhibit C.  This evidence, showing that Plaintiff was paid comparatively less than persons outside of her protected class who were subject to the same pay scale, is sufficient to establish her prima facie case, and the Court should therefore turn to consideration of the next prong of the McDonnell Douglas analysis.  See Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous].

2) **Legitimate, non-discriminatory reason**.    To meet its burden of establishing a legitimate, non-discriminatory reason for its salary decisions,[6] the Defendant has presented evidence on each comparator to show that Plaintiff was paid within the pay range for her position as an instructional distinguished professor, and that all three of the male professors cited by the Plaintiff were also paid within the established pay range when the $15,000.00 "specialty" bonus is included, and also taking into account the qualification of the faculty member, the needs of the College, the work performed by the faculty member, and the expertise of each faculty member.  Monroe Affidavit, ¶¶ 9-10.  Monroe attests that Bendidi, George and Justice were all considered specialty faculty members because of their fields of computer science and mathematics.  Id.

Given that the Defendant's burden is only one of production at this stage, the undersigned finds that this evidence is sufficient to establish a legitimate, non-discriminatory reason for the pay rates cited in the record.  EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case] [The defendant's burden is only one of production, not of persuasion].

3) **Pretext**. Where a Defendant rebuts the employee's inference of discrimination by

---

[6]The establishment of a prima facie case shifts to the Defendant the burden of producing evidence on this issue.  Lovelace v. Sherwin Williams Co., 681 F.2d 230, 239 (4th Cir. 1982).



demonstrating a legitimate, non-discriminatory reason for the employment decision, in order to prevail the Plaintiff/employee must demonstrate by a preponderance of the evidence that the employer's proffered reason is a mere pretext for discriminatory conduct. To make this demonstration, Plaintiff must show that "but for" her employer's intent to discriminate against her because of her sex and/or race, she would have received more pay. EEOC, 955 F.2d at 941; Conkwright v. Westinghouse, 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [gender/race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

　　　　　After careful review of the evidence and arguments submitted to the Court, the undersigned finds that Plaintiff has raised a sufficient issue of material fact as to whether she was the victim of discrimination to avoid summary judgment. The evidence, considered in the light most favorable to the Plaintiff, shows that she was the first faculty member to receive the distinction of being named a distinguished professor, but nevertheless received less in salary than the *starting* salary for that position (assuming, as claimed by the Plaintiff, that she was research faculty), or alternatively at the mid level (2003 - 2004 academic year) to maximum (2004 - 2005 academic year) for that position (assuming, as claimed by the Defendant, Plaintiff was instructional faculty). Since no documentary evidence has been submitted to show whether Plaintiff was research or instructional faculty, the undersigned has assumed Plaintiff's claim that she was research faculty to be correct for

11



purposes of summary judgment. <u>Pittman</u>, 87 F.3d at 118 [at summary judgment, the facts and evidence are considered in the light most favorable to the non-moving party]; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) [Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" are functions for the trier of fact].

By contrast, the evidence reflects that all three of the male professors cited by the Plaintiff received well in excess of the maximum pay for their positions, even if only the Defendant's own evidence is considered (the Defendant identifies all three male faculty members as being instructional faculty). Further, while Monroe, who is himself a male, attests that all three of these male faculty members received higher pay because they were entitled to the $15,000.00 "specialty faculty" bonus, none of their contracts reflect that their salaries included this bonus, nor does Monroe explain in his affidavit why any of these faculty members would have been entitled to extra pay due to their qualifications, the needs of the College, the work performed by the faculty member, or their expertise (other than to make the conclusory statement that "[f]aculty members in the fields of mathematics and computer science traditionally demand a premium based on market conditions") and, if so, how those criteria were applied to those faculty members in reaching a salary decision. <i>Cf.</i> <u>Keziah v. W.M. Brown & Son, Inc.</u>, 888 F.2d 322, 326 (4th Cir. 1989) [Subjectivity in salary setting process undermines efforts to show that pay differentials are based on factors other than sex] (Equal Pay Act case). Further, it is readily apparent that, even if the $15,000.00 bonus is added to the <i>maximum</i> each of these three male faculty members could have received under the pay scale submitted to this Court, Bendidi and Justice (at $63,750.00 and $63,000.00, respectively) both received in excess of even the maximum <i>including</i> the extra $15,000.00. Defendant has provided no explanation for this salary discrepancy.

12



Also, no information regarding the salary levels of any other comparable male and female faculty members has been provided; rather, the only evidence before this Court is the evidence showing how Plaintiff was paid under the pay scales used by the Defendant versus how these three male faculty members were paid under that same pay scale. Based solely on the evidence before the Court, the three male professors all received comparatively higher pay than did the Plaintiff, and there is also a genuine issue of fact as to whether Plaintiff was research faculty, which, if so, would result in an even greater disparity between what she was paid under the existing pay scale and what these three male professors were paid under that pay scale based on their respective positions.

While this evidence is obviously not conclusive on the issue of whether Plaintiff was discriminated against because of her gender[7], the undersigned does not find that "[n]o reasonable trier of fact could conclude" that Plaintiff's gender was the reason she received comparatively less pay

---

[7]The evidence with respect to Plaintiff's race claim is more problematic. The Defendant is, after all, a historically black college, and Monroe is, like the Plaintiff, himself an African-American. The undersigned is unable to draw any inference from the evidence presented that the reason Plaintiff received proportionally less pay under the Defendant's pay scale than the three identified male professors was due to the fact that she was an African-American, while the three male professors were of other races. *Cf.* <u>Dungee v. Northeast Foods, Inc.</u>, 940 F.Supp. 682 n. 3 (D.N.J. 1996) [that decisionmaker is member of plaintiff's protected class "weakens any possible inference of discrimination"]; <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991) ["[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."]; <u>United States v. Crosby</u>, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) ["While we acknowledge that a...violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim....we note that the district court found that there was no evidence that [the decision-maker] held members of his own race to a higher standard of conduct than members of another race."]. Indeed, in her brief opposing summary judgment, Plaintiff only argues that the evidence shows "Gender - based Wage Discrimination", and does not argue that her pay disparity was based on race. <u>Plaintiff's Brief</u>, pp. 12-14. Therefore, to the extent Plaintiff contends that any pay disparity was the result of her being an African-American, that claim should be dismissed.



than male employees whose pay was determined under the same pay scale and criteria. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); see Conkwright, 933 F.2d at 234 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision...was motivated by [gender]"]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson, 477 U.S. at 250-252; Reeves, 120 S.Ct. at 2105-2109 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; Lovell v. BBNT Solutions, LLC, 295 F.Supp.2d 611, 625 (E.D.Va. 2003); Long v. American Medial Ass'n, No. 03-3156, 2004 WL 1088229 at *7 (N.D.Ill. May 14, 2004) [Finding Plaintiff met her burden of demonstrating a genuine issue of material fact as to whether the proffered reasons for salary increase were pretextual]. Therefore, Defendant's motion for summary judgment with regard to Plaintiffs sex discrimination claim under Title VII should be denied.

## II.

## (Equal Pay Act Claim)[8]

---

[8]The applicable statute of limitations for an Equal Pay Act claim is two (2) years. 29 U.S.C. § 255(a).  Plaintiff filed this lawsuit on July 5, 2005.  Therefore, if her Equal Pay Act claim is otherwise viable, Plaintiff could recover under the Equal Pay Act only for any violations that occurred on or after July 5, 2003.



The Equal Pay Act provides that,

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1).

In order to establish a prima facie case under the Equal Pay Act, Plaintiff must show that she received less pay than a male co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions. Wheatley v. Wicomico County, Maryland, 390 F.3d 328, 331 (4th Cir. 2004), cert. denied, 544 U.S. 1032 (2005); Houck v. Virginia Polytechnic Inst. & State Univ., 10 F.3d 204, 206 (4th Cir. 1993).   If Plaintiff establishes a prima facie case, the burden shifts to the Defendant to prove that the difference in salary is justified by one or more of the four statutory exceptions.   29 U.S.C. § 206(d)(1) (2002); Equal Employment Opportunity Comm'n v. Aetna Co., 616 F.2d 719, 724 (4th Cir. 1980)(quoting § 206(d)(1)).  If the Defendant successfully meets this burden, then Plaintiff's claim fails "unless the plaintiff can satisfactorily rebut the defendant's evidence." Strag v. Board of Trustees, 55 F.3d 943, 948 (4th Cir. 1995).

However, unlike with respect to a Title VII claim, Plaintiff cannot establish an Equal Pay Act prima facie case by simply producing evidence creating an inference that she was discriminated against in terms of her salary because of her gender.  Rather, to establish a prima facie case under the Equal Pay Act, Plaintiff must affirmatively show that she received *less* pay than a

15



male co-employee performing the substantially same work as she was performing.  Houck, 10 F.3d at 206; see Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1327-1328 (10th Cir. 2004); cf. Hein v. Oregon College of Educ., 718 F.2d 910, n. 5 (9th Cir. 1983); Prewett v. State of Alabama Dep't of Veteran Affairs, 419 F.Supp.2d 1338, 1352 (M.D.Ala. 2006) ["The Court acknowledges that plaintiffs may not validly compare themselves to [comparators] who earn a lower salary than they do, and therefore the Court eliminates from each plaintiff's list of comparators those [comparators] who earn less than she does."].

No evidence has been presented to this Court to show that Plaintiff was paid less than any comparable male employee, and Plaintiff has presented no cogent argument to otherwise show why her Equal Pay Act claim should proceed in the absence of any such evidence.  Therefore, the Defendant is entitled to summary judgment on Plaintiff's claim under the Equal Pay Act.

### III.

### (Retaliation Claim)

Plaintiff alleges in her third cause of action that she was unlawfully retaliated against for engaging in protected conduct in violation of Title VII.  Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth  the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases are subject to the same requirements of proof as are applicable to

16



disparate treatment claims. <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989); <u>see also</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." <u>Id.</u>; <u>Munday v. Waste Management of North America, Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. <u>Id.</u>

Plaintiff testified that she complained in December 2003 to Dr. Nathaniel Jackson, the Defendant's Vice President/Academic Dean, that she was being paid less than male professors Bendidi and George. <u>See</u> <u>Plaintiff's Deposition, Exhibit 1</u>. This constitutes protected conduct under the statute, and in arguing for summary judgment on Plaintiff's retaliation claim, Defendant has not contested that Plaintiff engaged in protected activity under Title VII. There is also no dispute that Plaintiff suffered an adverse employment action (she was terminated). Defendant does argue, however, that there is no evidence of a causal connection between Plaintiff's termination and her having complained about allegedly discriminatory salary policies. <u>See</u> <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]. In support of this contention, Defendant argues that the

17



evidence clearly reflects that faculty members who are paid in part with federal grants must, pursuant to federal requirements, execute an employment contract, and that Plaintiff was only terminated after she refused to sign her employment contract for 2004 - 2005 despite being warned that she would be terminated if she did not.  <u>Monroe Affidavit</u>, ¶¶ 13 and 14, and <u>Exhibit H</u>; <u>see</u> <u>also</u> <u>Jackson Deposition</u>, pp. 47-48.  Defendant also argues that Plaintiff's refusal to sign her contract was a legitimate, non-discriminatory reason for its decision to terminate her employment.

Plaintiff argues, however, that it was not until after she had complained about the Defendant's allegedly discriminatory salary policies that the Defendant began to question her time and effort reports.  Plaintiff further testified that she objected to signing her 2004 - 2005 contract because it changed her allocations to reflect percentages that did not respond to the grants. <u>Plaintiff's Deposition</u>, p. 34.  Plaintiff notes that the Defendant's own external auditor found that Plaintiff's 2003 - 2004 faculty contract had not detailed the specific amounts charged to the sponsored programs, and that the Defendant could have simply reissued Plaintiff's 2004 - 2005 contract deleting any such references, as neither OMB nor the Defendant's own policies required such specifications in the contract. <u>See</u> <u>Defendant's Exhibit G</u>, pp. 3, 6.  Notwithstanding these audit findings, the Defendant chose to retain the percentages charged to each sponsored program in Plaintiff's 2004 - 2005 contract, and then terminated her when she refused to sign this document.

Finally, the record contains evidence of retaliatory animus. Plaintiff testified that after she made her complaint of discrimination concerning her pay, President Monroe stated during a Human Resources presentation that "you all can keep bitching about salaries all you want, but ain't nobody going to work here who sue us, and then the room became heated, and we went for a break, but those were his words." <u>Plaintiff's Deposition</u>, pp. 109-110.  The evidence further reflects that



thereafter Plaintiff's termination was the result of a "strategy" among the Defendant's hierarchy to prepare a "legally sound document of termination" for the Plaintiff as well as to establish "a public relations response, if needed." See Jackson Deposition, Exhibit 14.

        The undersigned finds that this evidence is sufficient to establish a causal connection between Plaintiff having engaged in protected conduct and her termination to satisfy the third prong of her prima facie case; cf. Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Gordon v. Southern Bells, Inc., 67 F.Supp.2d 966, 988 (S.D.Ind. 1999)["A short time span between protected activity and an adverse employment action may be sufficient to prove a causal connection between the two events. . . . A close temporal connection between the two events is generally enough to satisfy the third element of the prima facie case."]; Jones v. City of Elizabeth City, North Carolina, 840 F.Supp. 398, 403 (E.D.N.C. 1996), aff'd., 2 F.3d 1149 (4th Cir. 1993); Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991); and also that sufficient evidence of pretext has been shown to avoid summary judgment. The evidence, considered in the light most favorable to the Plaintiff, shows that after she engaged in protected conduct, the Defendant started questioning her time allocations and thereafter required her to sign a contract which Plaintiff believed falsely set forth her time allocations, even though it was not required that any allocations even be in that contract, leading to her termination. The evidence is also sufficient to at least raise an inference of material fact as to whether Monroe and other college officials had a retaliatory animus against her. LeBlanc, 6 Fd.3d at 843 ["Direct or indirect evidence of discriminatory motive may do, [as long as] 'the evidence as a whole...[is]



sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus]'"]; <u>Reeves</u>, 120 S.Ct. at 2105-2109 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; <u>Muhammad</u>, 36 F.Supp.2d at 243 ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing <u>Anderson</u>, 477 U.S. at 250-252.  Therefore, Defendants' motion for summary judgment with regard to Plaintiff's termination claim should be denied.

## IV.

### (State Law Contract Claim)

In her fourth cause of action, Plaintiff alleges that the Defendant was "subject to and bound by the provisions of the Voorhees College Faculty and Staff Handbook...which constituted a part of the contract between Plaintiff and Defendant", and that the Defendant breached its employment contract with the Plaintiff "by violating the provisions relating to anti-discrimination policies, objective position and salary criteria, equitable assignment of duties and responsibilities, payment of salaries, and protection against reporting illegal activities."  <u>Complaint</u>, ¶¶ 22-23.

Under South Carolina law, in order to prevail on a breach of contract claim, the Plaintiff bears the burden of establishing the existence and terms of the contract, the Defendant's breach of one or more of the contractual terms, and damages resulting from the breach.  <u>Taylor v. Cummins Atlantic, Inc.</u>, 852 F.Supp. 1279, 1286 (D.S.C. 1994), citing <u>Fuller v. Eastern Fire &</u>



Cas.Ins.Co., 124 S.E.2d 602, 610 (S.C. 1962). Defendant also notes that, under South Carolina law, for language in an employee handbook to create binding contractual obligations, the cited provisions or policies must be drafted in sufficiently mandatory terms to give rise to a reasonable expectation on the part of the employee of continued employment, and that the employer then breached the pertinent provisions of the employee handbook or the policies at issue. See Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987).[9]

Here, the Defendant's employee handbook does contain such a disclaimer, specifically providing that "the handbook is intended to provide guidance and insight designed to facilitate decisions and action made by its employees. The handbook is not an employment contract, and does not create any type of binding obligation." See Defendant's Exhibit I. Plaintiff notes, however, that the disclaimer further provides that an employee's "at-will status may...be changed by you and the President of Voorhees by executing a signed agreement". See Defendant's Exhibit I. Plaintiff did, of course, sign separate annual employment contracts with the Defendant, each of which specifically reference and incorporate the terms of the handbook. See Defendant's Exhibit A, VOR Nos. 720, 721 and 724.

There is no question that the faculty contracts signed by the Plaintiff each year constituted employment contracts, and the undersigned finds and concludes that the language in both the faculty contracts and in the disclaimer of the employee handbook is sufficient to create an issue of fact as to whether the faculty contracts incorporated the terms of the faculty handbook such as to

---

[9]Defendant further notes that South Carolina has provided by statute that an employee handbook will not constitute an express or implied contract of employment if the handbook contains an appropriate disclaimer, citing to S.C.Code Ann. § 41-1-110. However, this statute applies only to handbooks and disclaimers issued after June 30, 2004. Conner v. City of Forest Acres, 611 S.E.2d 905, 911, n. 3 (S.C. 2005).



give rise to a breach of contract claim if the Defendant is found to have violated any terms contained in the handbook. Small, 357 S.E.2d at 454-455 ["Trial court should submit to the jury the issue of existence of a contract when its existence is questioned and the evidence is either conflicting or admits of more than one inference"]; *cf.* Jones v. General Elec. Co., 503 S.E.2d 173, 183-184 (S.C.Ct.App. 1998) [finding material issue of fact as to whether hand book and other representations formed an employment contract].

   However, as correctly noted by the Defendant, the last faculty contract signed by the Plaintiff was for the 2003 - 2004 academic year, which expired on May 31, 2004. Defendant's Exhibit A, VOR 724. Plaintiff was offered an employment contract for the 2004 -2005 academic year, but she refused to sign this contract. Defendant's Exhibit A, VOR 725. Therefore, to the extent Plaintiff had a contract of employment with the Defendant, it expired on May 31, 2004. Plaintiff was not terminated until June 1, 2005, well after her last signed faculty contract had expired, and the Defendant's employee handbook would not by itself have constituted a contract of employment at that time. *Cf.* Small, 357 S.E.2d at 455 [only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]; Marr v. City of Columbia, 416 S.E.2d 615, 616 (1992) [where employer conspicuously disclaims the handbook as a contract and the parties have not waived the disclaimer, summary judgment for the employer on the issue of whether



the handbook forms an employment contract is appropriate]; <u>Storms v. Goodyear Tire & Rubber Co.</u>, 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; *cf.* <u>Finnane v. Pentel of America, Ltd.</u>, 43 F.Supp.2d 891, 900-901 (N.D.Ill. 1999); <u>O'Neill v. Early</u>, 208 F.2d 286, 287-288 (4th Cir. 1954) (dicta). Therefore, Plaintiff has no breach of contract claim against the Defendant based on her discharge.

However, with respect to Plaintiff's claims that the Defendant violated the handbook's provisions relating to anti-discrimination policies, payment of salaries, or protection against reporting illegal activities, these claims may, in part, predate May 31, 2004, and may therefore be viable contract claims. Since the handbook itself has not been provided to the Court for review, the undersigned is unable to make a determination as to whether any of the provisions of the handbook may have been violated during the period of time Plaintiff had contracts in effect with the Defendant,[10] and since it is the Defendant, as the moving party, who has the burden of proving that judgment on the pleadings is appropriate, and in the absence of any probative evidence for the Court to review to call into question this particular part of Plaintiff's claim, the motion for summary judgment should be denied at this time with respect to those claims.

_____

[10]Specifically with respect to Defendant's alleged violation of the handbook's anti-discrimination policy, such policies have been routinely held not to, by themselves, constitute a contract. *Cf.* <u>Hessenthaler v. Tri-County Sister Help, Inc.</u>, 616 S.E.2d 694, 698 (S.C. 2005), citing <u>McKenzie v. Lunds, Inc.</u>, 63 F.Supp.2d 986, 1003 (D.Minn. 1999) and <u>Cherella v. Phoenix Technologies, Ltd.</u>, 586 N.E.2d 29, 31 (Mass. 1992). However, whether Plaintiff's separate employment contract served to incorporate the handbook's anti-discrimination language, which has not itself been submitted into evidence, into her employment contract so as to render such language binding and sufficient for a separate state law breach of contract claim cannot be determined at summary judgment based on the evidence submitted. <u>Muhammad</u>, 36 F.Supp.2d at 243.



## V.

### (Public Policy Tort)

In her fifth and final cause of action, Plaintiff alleges that the Defendant terminated her out of retaliation for her refusal to falsify documents in support of Defendant's federal grants, and that as such the Defendant's actions violated the public policy of the State of South Carolina. Plaintiff notes that, pursuant to Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985), the retaliatory discharge of an at-will employee can constitute a violation of public policy, giving rise to an action in tort for wrongful discharge, where the employer requires an employee to violate the law. See also Lawson v. South Carolina Department of Corrections, 532 S.E.2d 259 (S.C. 2000).

Plaintiff has two problems in proceeding with this claim.  First, a Ludwick claim cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination.  See Heyward v. Monroe,  1998 WL 841494 at *4 (4th Cir. Dec. 7, 1998) ['South Carolina permits an action under public policy exception when an at-will employee is terminated for refusing to violate the law.  It has not been extended to circumstances where there is a statutory remedy for employment discrimination...."]; Ramsey v. Vanguard Servs, Inc., No. 07-265, 2007 WL 904526 at *1 (D.S.C. Mar. 22, 2007); Palmer House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 at *3 (D.S.C. Sept. 20, 2006); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18 (S.C. 1992); Epps v. Clarendon County, 405 S.E. 2d 386 (S.C. 1991). Here, Plaintiff has a federal statutory remedy for her claim under Title VII. See Section III, supra. Therefore, to the extent Plaintiff's public policy tort claim relates to conduct covered by Title VII, the availability of a federal statutory remedy precludes Plaintiff's public policy tort cause of action.

24



Additionally, even if there were no statutory remedy available for Plaintiff to otherwise pursue her claim for retaliatory discharge, the undersigned agrees with the Defendant that Plaintiff has presented no evidence to show that she would have been violating any law by executing her 2004 - 2005 faculty contract.  The only evidence submitted by the Plaintiff to support this claim is her statement in her deposition that she was told by a third party, Dr. Matthew Kinard, that she could not sign any documents that reflected anything different from what the grants provided. Plaintiff's Deposition, pp. 34-35.  Plaintiff has provided no evidence to support this general and conclusory statement, such as federal statutes or regulations supporting this claim or even an affidavit from the individual with whom Plaintiff testified she had spoken.  Conversely, Monroe specifically attests in his affidavit that the Defendant obtained an opinion on this matter from Wesley Peachtree Group of Atlanta, Georgia, an auditing firm utilized by the Defendant and numerous other colleges for the purpose of auditing federal grants and insuring compliance, a copy of which was provided to the Plaintiff, and further that no federal agency has ever questioned or challenged the Defendant's actions to bring Plaintiff's contract into compliance with the "100% Rule". See Monroe Affidavit, ¶ 19; see  also Defendant's Exhibits G & H.

Plaintiff has therefore failed to present evidence to show that she was discharged for refusing to cooperate and/or acquiesce in conduct that would have violated any law, or to show that she was discharged in retaliation for refusing to violate the law.   This claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment with respect to Plaintiff's race discrimination claim under Title VII, her Equal Pay Act claim, her contract claim with respect to her discharge or regarding any other contract claims which



post-date May 31, 2004, and her claim of a public policy tort, be **granted**, and that those claims be

**dismissed**.

For the reasons stated, it is further recommended that Defendant's motion for

summary judgment with respect to Plaintiff's pay discrimination claim under Title VII, Plaintiff's

claim for retaliation under Title VII, and her breach of contract claim involving non-discharge issues

which pre-date May 31, 2004, be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 14, 2007

26

