UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Dr. Cassandra M. Smith, | ) | Civil Action No.: 5:05-1911-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | **ORDER** |
| Voorhees College, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter was heard before a jury during the week of April 8, 2008. The case was submitted to the jury on two causes of action, one for wage-based sexual discrimination and another based on retaliation, both under Title VII. The jury returned a verdict in favor of the plaintiff on the retaliation claim against the defendant Voorhees College and awarded the plaintiff $175,000 in compensatory damages and $10,000 in punitive damages. The jury returned a verdict for the defendant on the sexual discrimination claim. The Court postponed entry of the judgment to allow the parties to submit briefs and affidavits or depositions on the issues of back pay and attorney's fees.  The Court further indicated on the record that there is a statutory cap of $100,000 on the combined amount of compensatory and punitive damages which may be awarded pursuant to 42 U.S.C. § 1981a(b)(3) and based on the undisputed testimony that Voorhees employed 155 employees.

*Back Pay*

"As a general rule, back pay is to be awarded to successful Title VII plaintiffs. . . Back pay is awarded in furtherance of the objectives of Congress in enacting Title VII to create employer incentives to ensure equality of employment opportunities and to make persons whole for injuries suffered on account of unlawful discrimination. . . Back pay 'should be denied only for reasons which, if applied

1

generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639,651 (4th Cir. 2002). The amount of such an award is in the discretion of the trial judge. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343,1358 (4th Cir. 1995).

Upon review of the briefs and affidavits submitted by the parties on the issue of back pay and after considering the evidence and testimony, the Court deems that some award of back pay is appropriate. The record reflects that the plaintiff began her employment with Voorhees as chairperson for the Division of Natural Sciences, Mathematics and Computer Science, teaching courses in biology, and director of a grant, HCOP, in July of 1998, earning $50,400 per year. She continued to sign ten-month contracts each year through May 31, 2004. The ten-month contract beginning August 1, 2003 and ending May 31, 2004 described her duties as Distinguished Professor of Biology/Chairperson, Division of Arts and Science/Coordinator of Biology and teaching courses as needed, at a salary of $65,000. Plaintiff was provided a ten month contract covering the period August 1, 2004 through May 31, 2005 at a salary of $70,000, but she testified that she refused to sign this contract due to the fact that the percentages attributed to various grants did not match the percentages set forth in the grants. However, she continued to work at the college at an annual salary of $70,000 through May of 2005. The plaintiff testified and the trial exhibits support her assertion that she also received monthly income from Voorhees during June and July in 2003 and 2004. In fact, the defendant admits in its brief that payments for June and July "were generally in the form of additional compensation paid to the Plaintiff." Defendant simply asserts that the plaintiff would not have been paid during the summer if she had not actually worked. It appears that the plaintiff was in fact employed at Voorhees each summer and that she was paid at least at the same rate that she was paid for her ten-month contract

between August and May.[1]

Either by way of testimony or affidavit, the plaintiff stated that, after her termination, she attempted to locate a comparable position at institutions of higher education in South Carolina but that she was unable to do so. However, she was able to mitigate her wage loss by becoming employed with Edward Waters College in Jacksonville, Florida beginning September 19, 2005. Additionally, she stated that she was making approximately the same income at Edward Waters College as she was making at the time of her termination at Voorhees but that her contract was for two years, after which it became a month-to-month contract. She also indicated that she attempted to locate an apartment to rent in Jacksonville, since she did not regard the Florida position as permanent and she planned to return to South Carolina. She also indicated that her subdivision in Columbia, South Carolina did not allow her to rent her home and that she commuted to Columbia on most weekends.

Plaintiff has requested an award of back pay from June of 2005 through part of September of 2005 in addition to an adjustment for extraordinary expenses which she incurred in mitigating her damages. These extraordinary expenses include the interest portion of her payment on a condominium which she purchased in Florida; mileage for 114 trips between Columbia and Jacksonville between September of 2005 through April of 2008, the date of trial; real estate taxes, monthly regime fees, and master association fees; and electric, telephone, and cable bills. Finally, the plaintiff requests compensation for certain grants as more fully discussed below. The total amount of back pay requested by the plaintiff is $160,778.85.

***Back pay from June 2005 through September 2005***

Plaintiff seeks back pay beginning the first month after her discharge, June 2005, and for July

---

[1] In fact, on cross-examination, the defendant pointed to the fact that Plaintiff made over $90,000 in 2004.

2005 in the amount of $7000 per month; $7500 for August of 2005; and $5000 for September 2005, when she became employed in Florida. Based upon the evidence presented, the court awards the plaintiff the sum of $7000 per month for June, July, and August of 2005 and $4000 for the partial month of September of 2005, totaling **$25,000**. The record does not reflect the basis for the plaintiff's request for $7500 in August of 2005 and the Court finds the back pay award should be based on $7000 per month, the amount the plaintiff was earning at the time of her termination.

***Back pay from September 2005 through April 2008***

A plaintiff in a Title VII case has the duty to mitigate her damages. *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982). "The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home." *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 119 (4th Cir. 1983). Discharged employees often incur relocation and moving expenses in connection with their new employment. These expenses are factors to be considered in connection with making a back pay award. *See, e.g.*, *Thomas v. Cooper Industries, Inc.*, 627 F. Supp. 655 (W.D. N.C. 1986)("[I]n this case, there were extraordinary expenses attributable to plaintiff's accepting the (new) employment, which she did in order to mitigate her damages. These extraordinary expenses are the costs of commuting and of setting up and maintaining a second household at Lumberton, North Carolina, where she has been forced to live during the week. These costs are not in the nature of consequential damages . . . They are 'economic consequences'."); *McDowell v. Mississippi Power and Light*, 641 F. Supp. 424 (S.D. Miss. 1986) (Plaintiff was entitled to reduce her interim earnings by a reasonable amount for mileage back and forth to the family home and rent at the location of the new job).[2] *See also*, 2 BARBARA T. LINDEMANN AND PAUL GROSSMAN,

---

[2] Defendant argues that the expenses claimed by the plaintiff for housing in Florida and her mileage are in the nature of compensatory damages which are subject to the cap for compensatory and

EMPLOYMENT DISCRIMINATION LAW, § 40.II.B.I.d (4th ed. 2007).

Based upon the evidence submitted at trial and by way of affidavit after the trial, the Court finds that the plaintiff has mitigated her damages and that she is entitled to reduce her interim earnings by an amount equal to a portion of those expenses. Plaintiff indicated she could not find similar employment elsewhere other than in Jacksonville, Florida. There is insufficient evidence to dispute this claim. Under *Spagnuolo*, a wrongfully discharged employee need not accept in mitigation of damages employment that is located an unreasonable distance from her home. Here, the plaintiff obtained similar employment a substantial distance away, and the defendant has benefitted by her being able to earn similar income. Had she not done so, defendant could be faced with a significantly larger back pay award. Again, her employment in Jacksonville was for two years and then became month to month. Since the position was not permanent, she chose not to sell her South Carolina home, where she planned to return. She attempted to rent an apartment in Florida, but found that the rent was excessive when compared to the prices of condominiums. She purchased a condominium and has requested the court only to take into account the interest portion of her mortgage payment. She has requested the court to take into account in setting back pay her expenses associated with the second home. Specifically, she only requests interest in the following amounts and does not request principal:

2005   $1806.08
2006  $15,395.83
2007  $16,641.65
2008  $5332.00
Total:$39,175.56

The Court finds that the plaintiff should be allowed the amount of **$39,175.56** as an offset

---

punitive damages. However, such damages do not fall within any of the categories of damages which are subject to the cap. Under 42 U.S.C. § 1981a, the cap applies to compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages. . ."

5

against her interim earnings which she received in mitigation of her damages. This amount equals the amount of interest which the plaintiff paid on the condominium from late 2005 when she purchased the condominium up to the date of the trial in 2008. The amount awarded would be equal to a monthly rental of around $1300 per month. The Court does not believe that an award of the real estate taxes, regime fees, and utility bills is appropriate and would result in a windfall to the plaintiff. While the Court finds that the plaintiff acted reasonably in keeping her Columbia home, it does not wish to grant her a windfall. The Court also awards the plaintiff mileage expense in the amount of **$18,079.55** representing round-trip travel between Columbia and Jacksonville two times per month from September 19, 2005 through the April, 2008 which is one-half of the requested $36,015.91 which was based on four times per month.

Plaintiff also requests grant bonuses to which she alleges that she is entitled in the faculty handbook in the total amount of $29,172.56. The defendant contends that the relevant provision only applies to grants awarded after 2004 and that the two grants claimed by the plaintiff were awarded prior to 2004. The college also asserts that the plaintiff has failed to provide the Court any information as to the amount of indirect costs; her affidavit only references the amount of direct costs. The Court agrees with the defendant and finds that the plaintiff is not entitled to the grant bonuses as an award of back pay.

The Court accordingly awards the plaintiff a total back pay award of **$82,255.11**. The Court sitting in equity and exercising its discretion, believes this to be a reasonable and fair amount of back pay and is consistent with the objectives of Title VII. This amount is substantially less than the total amount of $160,778.85 which was requested by the plaintiff, but in the opinion of the Court represents a fair, equitable balance recognizing her efforts to mitigate.

*Attorney's Fees*

The plaintiff has requested an award of $61,200.00 in attorney's fees (244.8 hours at $250 per hour) and costs in the amount of $2826.86. Plaintiff's motion for attorney's fees contains a detailed itemization of time spent. No response has been filed to the motion.

A court may award attorney's fees to the prevailing party in a Title VII case. 42 U.S.C. § 2000e-5(k). Under the "lodestar" formula, the Court should multiply the number of hours reasonably expended by counsel by a reasonable hourly rate. *See Child Evangelism Fellowship of South Carolina*, 2007 WL 1302692 (D.S.C. 2007). In determining reasonableness, the Court shall analyze the twelve factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). Those twelve factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

1. <u>Time and labor expended</u>. The Court has reviewed the itemization submitted by the plaintiff's attorney and finds such to reflect extensive work on the case. The Court does not question the time alleged to have been spent.

2. <u>Novelty and difficulty of issues</u>. The case required expertise and experience in employment discrimination litigation.

3. <u>Skill required to perform the legal services</u>. Plaintiff's attorney possesses the special

knowledge and experience required for a sexual discrimination and retaliation case and employment discrimination litigation.

4. <u>Attorney's opportunity cost</u>. Attorney practices in a small firm and it was thus necessary to him to forego other opportunities in order to properly represent the plaintiff.

5. <u>Customary fee for like work</u>. The Court finds that in its experience the hourly rate of $250 which is claimed and not challenged by the defendant is within the general range of hourly rates being charged in South Carolina for like work. The Court accordingly awards the plaintiff attorney's fees at the rate of $250 per hour, based upon the plaintiff's attorney's extensive experience in this field of law.

6. <u>Attorney's expectations at outset of litigation</u>. Attorney indicated that he took a chance when he took the case, since he could have recovered nothing.

7. <u>Time limitations imposed by the client or circumstances</u>. While prompt and intense work was often required at various stages of the case, it is not necessarily significantly different from the work required in other federal cases.

8. <u>Amount in controversy and results obtained</u>. The jury verdict of $175,000 in compensatory damages and $10,000 in punitive damages is an excellent result.

9. <u>Experience, reputation, and ability of attorney</u>. Attorney has practiced law for 49 years in Columbia with extensive litigation experience. He has also taught Trial Advocacy at the University of South Carolina School of Law for 29 years.

10. <u>Undesirability of case</u>. Many attorneys consider employment cases to be undesirable due to the fact that they require special expertise and have many risks.

11. <u>Nature and length of professional relationship</u>. Relationship has lasted for more than three years and due to the nature of the case was undoubtedly sometimes intense.

12. <u>Attorney's fees awarded in similar cases</u>. The number of hours expended are in line with

similar cases.

The Court has reviewed the itemized statement provided by the plaintiff's counsel and finds that he has spent 244.8 hours at $250 per hour. He is accordingly awarded **$61,200.00** in attorney's fees. The Court also awards the plaintiff her costs in the amount of **$2826.86**.

## CONCLUSION

Based on the above, the Clerk is directed to enter judgment for the plaintiff against the defendant Voorhees College on the third cause of action for retaliation under Title VII in the amount of $100,000 compensatory and punitive damages combined based on the statutory cap. Further, the plaintiff is awarded back pay in the amount of $82,255.11 and attorney's fees and costs in the amount of $64,026.86.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

June 27, 2008
Florence, South Carolina

9